1  Vassi Iliadis (*Pro Hac Vice*)
   (vassi.iliadis@hoganlovells.com)
2  James Ettinger (*Pro Hac Vice*)
   (jay.ettinger@hoganlovells.com)
3  Elliot Herzig (*Pro Hac Vice forthcoming*)
   (elliot.herzig@hoganlovells.com)
4  **HOGAN LOVELLS US LLP**
5  1999 Avenue of the Stars, Suite 1400
   Los Angeles, California 90067
6  Telephone: 310-785-4600

7
8  David B. Rosenbaum, 009819
   (drosenbaum@omlaw.com)
9  Colin M. Proksel, 034133
   (cproksel@omlaw.com)
10 **OSBORN MALEDON, P.A.**
11 2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012
12 Telephone: 602-640-9000

13
   *Attorneys for Defendant*
14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Nancy Encinas, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>Office Depot, LLC,<br><br>  Defendant. | Case No. 2:24-cv-01463-JJT<br><br>**MOTION TO DISMISS COMPLAINT**<br><br>**(Oral Argument Requested)** |

Defendant Office Depot, LLC ("Office Depot") moves to dismiss Plaintiff Nancy Encinas' putative class action Complaint with prejudice for lack of standing under Article III of the United States Constitution and Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

## I.  INTRODUCTION

Office Depot is the latest target of a series of nearly identical consumer privacy complaints filed in Arizona and a handful of other states attempting to stretch far beyond its intended purpose a narrow Arizona statute enacted to protect the confidentiality of telephone call and related utility records.[1]  Here, Plaintiff claims that Office Depot violated the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376, *et seq.* ("TUCSRA") by collecting information related to promotional emails that Plaintiff signed up to receive.  To date, no court has accepted this expansive and fanciful theory.  In fact, just last month, one court rejected it in a nearly identical case.  *See Hartley v. Urban Outfitters, Inc.*, No. 23-04891, 2024 WL 3445004 (E.D. Pa. July 17, 2024) at Dkt. No. 17.  This Court should follow suit.  Plaintiff's Complaint fails for the following reasons:

***First***, as in *Hartley*, Plaintiff lacks Article III standing to sue because she alleges no cognizable injury.  Plaintiff does not allege any facts to support her vague and conclusory allegation that her "sensitive" information was collected or used by Office Depot.  Rather, she alleges that a narrow set of *non-sensitive* information — such as when subscribers to Office Depot's promotional emails open and read an email, how long it takes them to read the email, whether the email was forwarded, and the IP address of subscribers' device — was collected.  To the extent one can even discern the precise information allegedly collected by Office Depot,

---

[1] *See Mills v. Saks.com LLC,* No. 23-10638 (S.D.N.Y. Dec. 6, 2023); *McGee v. Nordstrom Inc.*, No. 23-1875 (W.D. Wash. Dec. 6, 2023); *Hartley v. Urban Outfitters, Inc.*, No. 23-04891 (E.D. Pa. Dec. 12, 2023); *Carbajal v. Home Depot,* No. 24-730 (D. Ariz. Apr. 2, 2024); *Campos v. TJX Cos., Inc.*, No. 24-11067 (D. Mass. Apr. 22, 2024); *Dominguez v. Lowe's Cos. Inc.*, No. 24-1030 (D. Ariz. May 5, 2024); *Carbajal v. Gap Inc.*, No. 24-1056 (D. Ariz. May 7, 2024); *Smith v. Target Corp.*, No. 24-1048 (D. Ariz. May 7, 2024); *Knight v. Patagonia Inc.*, No. 24-255 (D. Ariz. May 20, 2024); *Torrez v. Signet Jewelers Ltd.*, No. 24-1332 (D. Ariz. June 4, 2024); *Segovia v. Burlington Coat Factory Warehouse Carp.*, No. 24-6730 (D.N.J. June 6, 2024).

1    this kind of information is too innocuous to create a privacy interest or be highly offensive to
2    a reasonable person.

3         ***Second***, Plaintiff fails to state a TUCSRA claim.  The plain text of the statute, paired
4    with analogous statutes, case law, and legislative history, confirms that the information at issue
5    does not constitute a "communication service record."  A.R.S. § 44-1376(1).  Nor does
6    Plaintiff allege any facts to show that she is a "customer" as contemplated by the statute.
7    Finally, Plaintiff fails to allege that Office Depot "knowingly" collected her information
8    without her authorization.

9         For each of these reasons, Plaintiff's Complaint should be dismissed with prejudice.

10   **II.**    **BACKGROUND**

11        **A.  PLAINTIFF'S COMPLAINT**

12        Plaintiff is an Arizona resident who claims to be a "subscriber" to Office Depot's "email
13   list."  Complaint ("Compl.") ¶¶ 3, 7.[2]  She alleges that "[w]ithin the past two years" and as
14   recently as June 2024, she received "promotional emails" from Office Depot containing
15   "hidden spy pixels."  *Id*. ¶¶ 4, 8.  According to Plaintiff, "[e]ach time [she] opened an email
16   from Office Depot," Office Depot "procured her sensitive email information" through the
17   alleged pixels which were "automatically downloaded" without her knowledge or consent.  *Id*.
18   ¶¶ 9–10, 33.  However, Plaintiff does not allege where the alleged pixels were downloaded
19   (e.g., Plaintiff's browser, device, etc.).

20        Plaintiff claims that the alleged pixels "capture and log" (i) the time and place she
21   opened and read the email, (ii) how long she read the email, (iii) her location, (iv) her email
22   client type, (v) her IP address, (vi) her device information, and (vii) whether and to whom the

23

24   [2] Plaintiff does not allege when or how she became a "subscriber" to Office Depot's emails.
25   She does not allege when she made an account with Office Depot, how she signed up for
     promotional emails, where she was when she opened the promotional emails and on what
26   device.  Accordingly, Office Depot reserves the right to file a motion to compel Plaintiff's
     claims to binding individual arbitration pursuant to her agreement to Office Depot's Terms of
27   Use, as well as to enforce its arbitration rights as to any putative absent class members.
28   Further, Office Depot assumes that Arizona law applies for purposes of this motion, but
     reserves the right to raise choice-of-law arguments in the future pursuant to (among other
     things) any choice-of-law or similar clause in Office Depot's Terms of Use.

email was forwarded. *Id*. ¶¶ 4, 9. However, the Complaint lacks any allegations regarding what each of these data points represents – for example, Plaintiff is silent about whether "place" refers to country, GPS coordinates, or something in between. Similarly, Plaintiff does not allege whether "time" refers to timestamp (i.e., exact date and time), time of day (e.g., morning, afternoon, night), time zone, or something else. Nor does Plaintiff explain how any of the information purportedly collected is "sensitive," "personal," or "confidential" (*id*. ¶¶ 4–5, 9, 58) or is information that Plaintiff did not otherwise voluntarily give to Office Depot when she subscribed to promotional emails. *See generally id*.

In certain paragraphs of the Complaint, Plaintiff alleges that the pixels record "email address" and "what kind of email server the recipient uses." Compl. ¶ 36. In others, Plaintiff alleges that the pixels collect "email path data" and "logs of device information," *id*. ¶ 52, along with "subscriber information" such as name and billing address. *Id*. ¶ 54. Overall, Plaintiff's allegations are inconsistent, vague, and conclusory. *See generally id*. Nonetheless, Plaintiff avers that Office Depot has engaged in "invasive surveillance" of her "sensitive reading habits" and "clandestine collection" of her "confidential email records," leading to an "invasion of privacy." *Id*.

Based on these allegations, Plaintiff asserts a single cause of action for violation of A.R.S. § 44-1376.01, a provision of TUCSRA, on behalf of herself and "[a]ll persons within Arizona who have opened a marketing email containing a tracking pixel from [Office Depot]." *Id*. ¶ 42. Plaintiff theorizes that Office Depot violated TUCSRA by "procuring" her "communication service record" without her knowledge or consent. *Id*. ¶¶ 49–59. Plaintiff argues that Office Depot "procured" her information within the meaning of the TUCSRA because it was obtained "electronically." *Id*. ¶ 53. Further, without providing any explanation, she concludes that the information allegedly collected by Office Depot constitutes "communication service records." *Id*. ¶¶ 52, 54.

**B. THE PURPOSE, HISTORY AND LEGISLATIVE SCHEME OF TUCSRA**

The Arizona Legislature enacted TUCSRA to protect a narrow set of consumer utility service records against a specific threat: individuals who impersonated consumers to extract

- 3 -

information about them from their utility records.  In particular, the Legislature was concerned about over 40 third-party data brokers who had "fraudulently gained access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge." *See* Ariz. Sen. B. Summ., 2006 Reg. Sess., H.B. 2785 (Apr. 24, 2006).

To curb this behavior, state legislatures including the Arizona Legislature and the United States Congress introduced legislation strengthening consumer protection around this practice.  *See id.*

The Arizona Legislature began by passing the Telephone Records Act of 2006, which protected only telephone records.  *See* 2006 Ariz. Legis. Serv. Ch. 260 § 1 (H.B. 2785).  The following year, Congress enacted the Telephone Records and Privacy Protection Act, which contained similar prohibitions against obtaining and selling customer records from telephone service providers.  However, this federal Act was broader than its Arizona counterpart because it applied to records from Internet-based service providers – specifically, internet-based voice calling providers – as well as telephone service providers.  *See* 18 U.S.C. § 1039.  Arizona followed suit by enacting TUCSRA, which amended the Telephone Records Act of 2006 to apply to communication records from any communication service provider, whether telephone-based, internet-based or otherwise, as well as public utility records from public utility providers.  *See* Ariz. Sen. Fact Sheet for H.B. 2726 (April 20, 2007) and A.R.S. § 44-1376, *et seq*.  However, the purpose of the legislation remained unchanged: to prohibit the procurement and sale of customer records of service providers through unlawful means.  *Id.*

For the next fifteen years, not a single court was ever called on to interpret TUCSRA in the way suggested by Plaintiff.  And, even in the last few years, the few publicly available cases discussing TUCSRA arose in the criminal context and involved law-enforcement subpoenaing telephone or other communication service providers.  *See, e.g., State v. Zuck*, No. 2 CA-CR 2019-0130, 2021 WL 2103598, at *4 (Ariz. Ct. App. May 25, 2021) (unpublished)

(denying appeal of criminal conviction where defendant alleged that a subpoena obtaining his internet subscriber information pursuant to TUCSRA was unlawful).

## III. ARGUMENT

### A. PLAINTIFF LACKS ARTICLE III STANDING

The Complaint should be dismissed because Plaintiff has not met her threshold burden of alleging an "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To establish Article III standing, Plaintiff must allege an "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. Alleging a statutory violation is not enough. As the Supreme Court reiterated in *TransUnion LLC v. Ramirez*, Plaintiff must show "a concrete injury even in the context" of alleged "statutory violation[s]," such as TUCSRA as here. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citation omitted). Under Article III, "an injury in law is not an injury in fact." *Id*. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 427. Whether a concrete harm was suffered requires Plaintiff to identify "a close historical or common law analogue for [her] asserted injury." *Id*. at 414.

Here, Plaintiff pleads no concrete injury flowing from Office Depot's purported statutory violations. All Plaintiff alleges is that Office Depot "invaded her privacy and intruded upon her seclusion" through its alleged "invasive surveillance" of Plaintiff's "sensitive reading habits" and the collection of her "confidential email records." Compl. ¶¶ 5, 58. This is not enough. Under *TransUnion*, Plaintiff must show that she personally suffered either tangible harms, generally physically or monetary, or an "intangible harm[]" that has a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as the closest equivalent common law, intrusion upon seclusion. 594 U.S. at 425. However, Plaintiff fails to allege any facts to support the elements of such claim. *See generally* Compl.

To state a claim for intrusion upon seclusion, Plaintiff must identify (1) a protected privacy interest (2) whose violation would be "highly offensive to a reasonable person." *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023) (quoting Restatement (Second) of Torts § 652B); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022) (quoting Restatement (Second) of Torts § 625D)). Critically, courts have held that there is "no legally protected privacy interest and reasonable expectation of privacy" in electronic messages "in general." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp 3d 1026, 1035 (N.D. Cal. 2014) (citation omitted); *see also, e.g., Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) ("[T]here is no reasonable expectation of privacy *when the data is within users' common-sense expectation* or when the information is *not sensitive*.") (emphasis added); *United States v. Eller*, No. CR16-8207-01-PCT-DGC, 2019 WL 6909567, at *2 (D. Ariz. Dec. 19, 2019) (defendant "is incorrect that [his] privacy interest applies to basic subscriber records and IP address information"); *VanDyck v. United States*, No. CV-21-00399-TUC-CKJ, 2022 WL 17689168, at *8 (D. Ariz. Dec. 15, 2022) ("Courts universally find a subscriber does not maintain a reasonable expectation of privacy with respect to subscriber information…").

Plaintiff does not allege any facts to support her allegation that her "private," "sensitive," or "confidential" information was collected or used by Office Depot. Compl. ¶¶ 4–5, 9, 58. Rather, she alleges that a narrow set of non-sensitive record information — such as when subscribers to Office Depot's promotional emails open and read the email, how long it takes them to read the email, whether the email was forwarded, and the IP address of subscriber's devices — was collected. *Id*. ¶ 9; *see also* ¶¶ 4, 36, 41, 52, 55.[3] To the extent

---

[3] As noted, Plaintiff also alleges that Office Depot collects "email client type," "logs of email path data," and unidentified "device information." Compl. ¶¶ 52, 54–55. It is not clear what these terms mean or are intended to represent. Plaintiff does not allege what specific data is at issue. For example, although at paragraph 54 of the Complaint, Plaintiff generally alleges that Office Depot collected "communication service record(s)," quoting the definition of the term in its entirety, she does not specify what information allegedly collected by Office Depot constitutes these records, and whether or how this information is sensitive. Additionally, to the extent data like name and email address were collected and forms the basis of Plaintiff's

- 6 -

one can even discern the precise information allegedly collected by Office Depot, this kind of information is too innocuous to create a privacy interest or be "highly offensive" to a reasonable person.

In *Hartley*, the plaintiff similarly alleged that defendant Urban Outfitters violated TUCSRA through the use of an email pixel.  The court analyzed each type of data purportedly collected by the defendant and concluded that the alleged data collection failed to establish an invasion of privacy for purposes of Article III standing.  *Hartley*, 2024 WL 3445004, at * 6-7.  With respect to "digital records reflecting merely the dates and times at which Plaintiff opened promotional emails she signed up to receive and the length of time she spent reading them," the *Hartley* court found that they were not "sufficiently personal to support a concrete injury."  *Id*., at *7 (citing *In re BPS Direct, LLC*, No. 23-md-3074, 2023 WL 8458245, at *7 (E.D. Pa. Dec. 5, 2023) (finding that the tracking of mouse clicks and browsing activity did not amount to an invasion of privacy)).

*Hartley*'s holding comports with established precedent: courts consistently conclude that how a user interacts with digital marketing does not give rise to an Article III privacy injury.  *See, e.g.*, *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no privacy injury in recording of mouse movements and clicks on website); *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (no privacy injury in intercepting and recording website visitor's electronic communications, including their mouse movements, clicks, keystrokes, and URLs of web pages visited); *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) (no privacy injury in intercepting IP address, browser type, and date, time, and duration of user's visit); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023) (no privacy injury in intercepting and recording mouse movements, clicks, keystrokes, URLs of web pages visited, and/or other electronic communications in real-time).

---

TUCSRA claim, Plaintiff voluntarily provided it when she subscribed to receive promotional emails.  *Id*. ¶ 3.

At most, here, the Court might infer that Office Depot can ascertain the effectiveness of its promotional emails based on whether Plaintiff opened the email or how long she spent reading the email. However, there is no protected privacy interest in this information, particularly when the information was allegedly provided directly to Office Depot, the sender of the communications. *Cook*, 689 F. Supp. 3d at 66 ("[Plaintiff] certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either.").

Similarly, information regarding device type, operating system, or email viewing platform cannot give rise to a concrete injury because such information is "not comparable to those traditionally contemplated as giving rise to a reasonable privacy interest." *Hartley*, 2024 WL 3445004, at *6; *see also Massie*, 2022 WL 534468 (concluding no privacy interest where defendant records, among other things, the plaintiff's browser type, IP address, and device's operating system). As for information such as name and email address, the *Hartley* court—and many others—have found that such information does not give rise to a privacy violation, particularly where Plaintiff voluntarily discloses it. *Hartley*, 2024 WL 3445004, at *6 ("Plaintiff could not have been harmed by defendant's procurement of her name or associated email addresses—details she necessarily provided to defendant when she signed up for its promotional emails"); *see also Zynga, Inc.,* 600 F. Supp. 3d at 1049 ("basic contact information, including one's email address, phone number, or Facebook or Zynga username," or date of birth and account passwords is "not so private that their revelation would be highly offensive to a reasonable person" and the collection thereof did not establish standing); *Brignola v. Home Props., L.P.*, No. Civ.A. 10-3884, 2013 WL 1795336, at *12 (E.D. Pa. Apr. 26, 2013) (finding a plaintiff's "name, address, phone number, etc. . . . are not private facts actionable for an [invasion of privacy] claim" and the collection thereof did not establish standing).

### B. PLAINTIFF FAILS TO STATE A CLAIM UNDER TUCSRA

Plaintiff's claim under TUCSRA also fails as a matter of law under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must allege "enough facts

to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The sole theory of liability in the Complaint is that Office Depot "knowingly procure[d]" Plaintiff's "communication service records" without her consent in violation of A.R.S. § 44-1376.01. Compl. ¶¶ 53, 55. Further, TUCSRA only applies to records of a "customer." *See* A.R.S. § 44-1376.01(A)(1). For the reasons set forth below, Plaintiff fails to allege facts to show that Office Depot procured "communication service record" of a "customer," and did so "knowingly."

### i. Plaintiff Fails To Allege That Office Depot Collected "Communication Service Record."

Plaintiff's Complaint rests on a single claim: Office Depot violated A.R.S. § 44-1376.01 by knowingly procuring a "communication service record" of Plaintiff without her consent. However, a plain reading of the term "communication service record," as well as the legislative and historical context, makes clear that this information is not covered by TUCSRA.

<u>The information at issue does not constitute a "Communication Service Record" based on a plain reading of the statute.</u>

*First*, a plain reading of the term "communication service record" indicates that the records are limited to those held by a *communication service*, like an internet service provider. This makes sense because, as discussed at page 11 below and Section II.B. above, the narrow purpose of TUCSRA was to prevent the unlawful collection of records held by communication service providers. Here, Office Depot is a retailer, not a communication service provider. Further, Plaintiff does not allege that Office Depot procured records from a communication service provider. Instead, Plaintiff alleges that Office Depot collected its own records about their email communications with Plaintiff, which are plainly not a "communication *service* record."

***Second***, the statutory definition of "communication service record" in TUCSRA excludes the information allegedly collected by Office Depot. TUCSRA defines this term to include the following:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features. Communication service records do not include the content of any stored oral, wire or electronic communication or a telephone record.

*See* A.R.S. § 44-1376(1).

These statutory categories are clearly targeted to communication *service* records specifically – not *communication* records generally. For example, "nature of communication service," "toll bills," "length of service," "access logs," "billing address," and "payment method" are all records that *communication service providers* would generally maintain. This kind of specific information would not be listed if the Arizona Legislature intended to capture any and all communication records.

<u>The term "communication service record" in other Arizona statutes does not encompass the information at issue.</u>

Other statutes regulating a "communication service record" are restricted to records held by communication service providers. Notably, in 2000, the Arizona Legislature amended its Eavesdropping and Communications Act ("ECA") to allow prosecutors to subpoena "communication service records" from "all communication service providers that do business in this state or that furnish communication services to persons within this state." A.R.S. § 13-3018 (A), (B). The ECA defined "communication service provider" to mean "any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* § 13-3001 (3). And it defined "communication service record" with exactly the same language that the legislature later adopted in TUCSRA. *See id.* § 13-3018 (G).

The Legislature would not have adopted the ECA's definition to restrict "communication service records" to records held by communication services providers, and then later adopt the same term in TUCSRA to have a far broader application. Indeed, Arizona courts do not "interpret the [L]egislature's use of the identical phrase in two statutes relating to the same general subject matter as having two entirely different meanings." *Maricopa Cnty. v. Barkley*, 812 P.2d 1052, 1056 (Ariz. Ct. App. 1990).

<u>The legislative history of TUCSRA excludes the information allegedly collected by Office Depot.</u>

As explained in detail above, the Arizona Legislature enacted TUCSRA to protect a narrow set of consumer service records against a specific threat: individuals who, via fraud or other unlawful means, extract information about customers from service providers. In the almost two decades since its enactment, not a single court was ever called on to interpret TUCSRA in the way advanced by Plaintiff. *See* Section [II.B]; *Zuck*, 2021 WL 2103598, at *4.

Accordingly, this Court should not adopt Plaintiff's interpretation of "communication service record" because it would effectively prevent any business from retaining practically all records about communications with their customers without explicit authorization. For example, every business that collects communication records from marketing or promotional emails could violate TUCSRA. Even news organizations could violate TUCSRA by keeping records of how long each subscriber had been on the distribution list without obtaining the subscriber's consent. What's more, because violations of TUCSRA could lead to criminal liability, as well as civil, adopting Plaintiff's suggested approach could lead to criminal liability for innumerable businesses. This absurd result cannot stand.

**ii. Plaintiff Fails To Allege She Is A "Customer"**

TUCSRA only prohibits a person from procuring or attempting to procure communication service records of a "customer." A.R.S. § 44-1376.01 (A)(1). Moreover, TUCSRA only allows a "customer" to recover from Office Depot due to violations of this statute. A.R.S. § 44-1376.04 (A).

Arizona courts interpret statutes in order to "give effect to the legislature's intent." *State v. Allen*, 513 P.3d 282, 313 (Ariz. 2022) (citation omitted). When statutory language is clear, the court must "apply the language without using other means of statutory construction." *Id.* (cleaned up). When a penal statute is at issue, courts must "resolve all doubts in the defendant's favor" whenever there is ambiguity. *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004). This is necessary to ensure defendants have "fair warning of the nature of the conduct proscribed." *Vo v. Super. Ct.*, 836 P.2d 408, 413 (Ariz. Ct. App. 1992). Here the statutory language is clear: the Legislature chose the word "customer" to restrict TUCSRA to individuals who *purchased* goods or services. Indeed, the Oxford English Dictionary defines "customer" as "[a] purchaser of goods or services. In early use: spec. a person regularly purchases from a particular business."[4]

Here, aside from the allegation that she signed up to receive Office Depot promotional emails (Compl. ¶ 3), Plaintiff fails to allege that she is a *customer* of Office Depot. Nowhere in the Complaint does Plaintiff allege that she purchased goods or services from Office Depot, nor does she plead any context that even allows an inference that she made a purchase, such as the type of shopping she performed at Office Depot, the type of promotions she sought, or how she interacted with Office Depot. Further, her purported class action only seeks to represent persons in Arizona who "opened a marketing email containing a tracking pixel" from Office Depot. *Id.* ¶¶ 1, 42. This is plainly not enough to plead facts that she is a "customer" under TUCSRA.

### iii. Plaintiff Fails To Allege That Office Depot "Knowingly" Procured Information Without Plaintiff's Authorization

TUCSRA does not simply prohibit a person from attempting to procure communication service records without customer authorization. Rather, TUCSRA adds an additional, mental state requirement: knowledge. A person must not "*knowingly* procure [customer service records] . . . without the authorization of the customer." A.R.S. § 44-1376.01 (A) (emphasis added). Plaintiff fails to allege that Office Depot has done so here.

---

[4] https://www.oed.com/dictionary/customer_n (last visited August 21, 2024)

"Knowingly," as commonly understood in Arizona law (and as specifically defined in Arizona's criminal code) means that "a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b).

In this case, Plaintiff fails to allege that Office Depot was aware that Plaintiff did not authorize any alleged collection of data. As discussed above, the Complaint is silent about how Plaintiff subscribed to Office Depot's marketing emails. Plaintiff does not state whether she read, agreed to, or was presented with any terms or disclosures when she subscribed to receive these emails. Plaintiff fails to mention the subscription process at all. She simply concludes, without elaboration or explanation, that Office Depot "knowingly" collected her communication service records without authorization. Compl. ¶¶ 54–57. Given this dearth of allegations in the Complaint, the Court cannot reasonably infer that Office Depot *knew* Plaintiff did not authorize any alleged collection of her data. *See, e.g., Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (affirming dismissal for failure to satisfy the statutory requirement of knowledge because plaintiff's "allegation that [defendant] knowingly submitted false claims is merely *possible* rather than plausible") (citation omitted); *see also, e.g., Hamilton v. Yavapai Cmty. Coll. Dist.*, 2014 WL 11515631, at *1 (D. Ariz. Sept. 9, 2014) ("To satisfy this heightened [knowledge] standard, the complaint 'must identify the who, what, when, where, and how of the misconduct charged . . .'").

## IV. CONCLUSION

For these reasons, Office Depot respectfully requests that the Court grant its Motion to Dismiss without leave to amend.

/ / /

/ / /

RESPECTFULLY SUBMITTED this 23rd day of August, 2024.

**HOGAN LOVELLS US LLP**


By: *s/ Vassi Iliadis*
    Vassi Iliadis (*Pro Hac Vice*)
    James Ettinger (*Pro Hac Vice*)
    Elliot Herzig (*Pro Hac Vice forthcoming*)
    1999 Avenue of the Stars, Suite 1400
    Los Angeles, California 90067

**OSBORN MALEDON, P.A.**

    David B. Rosenbaum
    Colin M. Proksel
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

*Attorneys for Defendant*